J-S57001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.R.H., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.H., MOTHER | No. 693 EDA 2015 |

Appeal from the Decree February 10, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000603-2013
CP-51-DP-0000813-2010

| | |
|---|---|
| IN THE INTEREST OF: D.H-R., MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.H., MOTHER | No. 695 EDA 2015 |

Appeal from the Decree February 10, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000602-2013
CP-51-DP-0000814-2010

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                    **FILED NOVEMBER 10, 2015**

Appellant, D.H. (Mother) appeals from the February 10, 2015 decrees involuntarily terminating her parental rights, and changing the permanency goals to adoption, with respect to her minor female children, D.H.-R., born in

December 2002, and D.R.H., born in August 2005 (collectively, the Children).[1] Upon careful review, we affirm.[2]

By way of relevant background, the Children were placed in the custody of the Philadelphia Department of Human Services, Children and Youth Division (DHS), on October 19, 2010, due to Mother hitting D.H.-R., the oldest child, and D.H.-R. being afraid to go home. *Id.* at 2. In addition, on the same date, Mother inadvertently called DHS, and DHS overheard Mother yelling and cursing at D.H.-R. *Id.*

Following a hearing, the Children were adjudicated dependent on November 10, 2010. The trial court ordered Mother to undergo a drug screen and assessment at the Clinical Evaluation Unit (CEU). *Id.* An Individual Service Plan (ISP) was established for Mother and the goal of reunification was set for the family. The trial court aptly described Mother's service plan goals as follows.

> Mother's first goal was to stabilize her mental health by attending therapy with an anger management

---

[1] At the termination hearing the trial court indicated "as far as [M]other. The children are released for adoption, although they won't - - the case won't be transferred to the adoption unit until we complete all the fathers." N.T., 2/10/15, at 182. Accordingly, Mother's appeal is limited to reviewing the decree involuntarily terminating her parental rights.

[2] The trial court involuntarily terminated the parental rights of D.H.-R.'s putative father by decree dated April 16, 2015. He has not filed a notice of appeal, and he is not a party to this appeal. With respect to D.R.H.'s father, the certified record before this Court indicates his parental rights are not terminated.

component. Mother's second goal was to maintain recovery from drug and alcohol abuse. In order to do so, Mother had to participate in drug and alcohol abuse evaluations, to comply with all treatment and all recommendations. Furthermore, Mother had to sign authorization to allow DHS to track her progress. Mother's third goal was to provide Children with adequate and safe living conditions by locating and occupying suitable housing for her family with suitable space and other operative utilities. Mother's fourth goal was to provide Children with a safe environment with appropriate supervision and maintain Children's health needs. Mother's fifth goal was to maintain her relationship with her Children by participating in placement activities, regular visitation, and meeting regularly with the agency social worker. Mother's sixth goal was to improve communication and her relationship with Children by attending counseling. Mother's final goal was learn and use non-violent and non-physical discipline methods by learning and understanding at least two non-physical discipline methods and refrain from any physical method. Mother also had to attend [Family Service Plan] meetings, complete parenting classes, and understand and protect the Children from sexualized victimization and understand the trauma behind it.[3]

*Id.* at 6-7 (citations to record omitted).

By June 2011, Mother tested positive for phencyclidine (PCP) and marijuana. Trial Court Opinion, 5/18/15, at 3. Mother tested positive for marijuana again on June 5, 2012, and for cannabinoid on July 18, 2012, October 30, 2013, and December 6, 2013. *Id.* at 4-5.

_____

[3] This goal arose from a report made by D.H.-R. that she was sexually molested by D.R.H.'s father while she was living with Mother. N.T., 2/10/15, at 20-21. DHS substantiated the child's report. *Id.* at 21.

On October 18, 2013, DHS filed petitions for a goal change to adoption. On October 22, 2013, DHS filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[4] A termination and goal change hearing occurred on February 10, 2015, during which DHS presented the testimony of the DHS caseworker, Roya Paller, and the DHS program analyst, Carla Gardner. Mother testified on her own behalf.

On February 10, 2015, the trial court involuntarily terminated Mother's parental rights. On March 11, 2015, Mother filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), which this Court consolidated *sua sponte*.[5] **See generally** Pa.R.A.P. 513. The trial court issued a Rule 1925(a) opinion on May 18, 2015.

On appeal, Mother presents the following issues for our review.

> 1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [ ] Mother[] under 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and § 2511(a)(8)?

_____

[4] On February 3, 2015, DHS filed amended petitions, which it withdrew at the time of the hearing. N.T., 2/10/15, at 5-6, 8.

[5] On March 11, 2015, Mother, acting *pro se*, filed timely notices of appeal. On the same day, Mother's counsel filed notices of appeal. As such, this Court dismissed Mother's *pro se* notices of appeal as unnecessary and duplicative. **See** Trial Court Opinion, 5/18/15, at 5.

2. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of [Mother's] parental rights best serves the Children's developmental, physical and emotional needs and welfare?

Mother's Brief at 5.

We are guided by the following standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis

- 5 -

pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows.[6]

**§ 2511. Grounds for involuntary termination**

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

…

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the

---

[6] This Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Therefore, in light of our disposition as to Section 2511(a)(2), we need not consider Mother's arguments with respect to Section 2511(a)(1), and (8).

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b). "The grounds for termination [of parental rights under Section 2511(a)(2),] due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (internal citations omitted).

With respect to Section 2511(b), the requisite analysis is as follows.

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and

> status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, with respect to Section 2511(a), Mother argues that the evidence is insufficient to support the termination of her parental rights. Specifically, Mother asserts that she has completed two parenting classes and an anger management class. Mother's Brief at 12. In addition, Mother argues that she has been consistently attending mental health treatment, and that her last three drug screens were negative. *Id.* As such, Mother argues that she has remedied the conditions that brought the Children into care, and that she is capable of parenting them at this time. *Id.*

In contrast, the trial court found that, although Mother attended mental health treatment, anger management therapy, and parenting classes, Mother has not made acceptable progress. Trial Court Opinion, 5/18/15, at 7-9. With respect to her mental health and anger management, the trial court found as follows.

> Mother had a nervous breakdown and was hospitalized in a psychiatric hospital [i]n December 2014. Mother attempted suicide due to a thyroid problem. … Mother's lack of anger control still constitutes an obstacle to reunification. As established by the record, Mother is aggressive,

> reactionary, and does not use the skills learned in anger management therapy. … Additionally, the trial court observed Mother in the courtroom being very disrespectful by interrupting the proceedings numerous times.

*Id.* at 7-8 (citations to record omitted). Further, with respect to parenting, the trial court made the following findings.

> Mother is still far from achieving the necessary parenting skills to assume her parental duties. As the social worker testified, Mother inappropriately stated that "she needed money and she was upset with DHS, and she felt that DHS was failing her, and she is telling the kids how it's killing her and DHS is lying to her and killing her. And, of course, to a child, I'm sure they believe that DHS is killing her, and so, now they're afraid their Mother is dying." Mother's inability to learn from her parenting and anger management classes puts the Children at risk because the Children present stress and anxiety.

*Id.* at 9 (citations to record omitted).

Upon review, the testimony of the DHS caseworker, Roya Paller, supports the trial court's findings. Indeed, Ms. Paller testified on cross-examination by the Child Advocate that, although Mother's drug screens on November 25, 2014, and January 7, 2015, were negative, she is not in a position to reunify with the Children. That testimony occurred as follows.

> Q. So, even with those recent negative drug screens for mom, do you believe that puts her in a position to reunify with her children?
>
> A. No.
>
> Q. And why not?

- 9 -

> A. I think mom's anger management and parenting skills and her [in]ability to handle stressors puts the children at risk because the children present stress.

N.T., 2/10/15, at 89.[7]

With respect to Mother's remaining goals, the trial court found that she has been non-compliant for the life of the case, which was 52 months at the time of the hearing. Regarding drug and alcohol treatment, the trial court found as follows.

> Mother has tested positive for PCP and Marijuana on numerous occasions. Mother has not complied with various court orders ordering her to provide drug screens and assessment[] evaluations. As far back as August 8, 2011, Mother was recommended to attend and complete an outpatient intensive treatment program. Although Mother completed a drug treatment program, Mother continued to provide positive drug screens on occasion. Mother was ordered to attend another drug treatment program, but she has refused. …. The trial court had serious concerns that Mother is continuing to abuse drugs.

Trial Court Opinion, 5/18/15, at 8 (citations to record omitted). Ms. Paller's testimony supports these findings.

Regarding maintaining her relationship with the Children, the trial court found that "DHS provided Mother with transportation tokens … but

---

[7] With respect to the negative drug screen on November 25, 2014, the court read on the record and in open court a portion of the report that stated "'Barbiturates: Negative 19.12,' which is between the range of zero and 200 … milliliters." N.T., 2/10/15, at 86. Similarly, the drug screen on January 7, 2015, although negative, still indicated traces of barbiturates, cocaine, opiates, and PCP. *Id.* at 87.

Mother failed to take advantage of the services, failing to attend Children visits during 2014. The record also established that Mother did not visit with the Children between December 13, 2012, and March 13, 2013, as per Mother's regular ISP reviews." *Id.* at 9 (citations to record omitted). The testimony of Ms. Paller supports the trial court's findings in that she testified Mother had no visits at all in 2014 with the Children. N.T., 2/10/15, at 69.

Regarding Mother's obligation to maintain contact with DHS, the trial court found the following.

> Mother's efforts in contacting DHS were focused on complaining about DHS services. Mother prioritized leaving aggressive messages for DHS instead of manifesting interest for her Children[]…. Mother's contact with DHS was poor….

Trial Court Opinion, 5/18/15, at 9 (citations to record omitted). Ms. Paller's testimony supports this finding by the court. In addition, the testimony of Carla Gardner, the DHS program analyst whose job was to file complaints made by people who have problems with the management of their cases, supports this finding in that she spoke with Mother over twenty times regarding her complaints. *Id.* at 124.

In its Rule 1925(a) opinion, the trial court noted the following with respect to understanding the sexual abuse trauma suffered by D.H.-R.

> Mother was referred to JJPI [Joseph J. Peters Institute] once in 2014 and again in 2015. Other previous referrals were also made before 2014. DHS [s]ocial worker's testimony established that an annual referral to JJPI[] was enough for Mother to attend the therapy. Mother was aware of this

> objective through [the] DHS social worker and [the] JJPI counselor. However, she did not comply with this objective.

Trial Court Opinion, 5/18/15, at 9 (citations to record omitted). Ms. Paller's testimony supports these findings. In fact, she testified that Mother has never addressed D.H.-R.'s sexual abuse. N.T., 2/10/15, at 48-49. Ms. Paller explained that, because D.H.-R. made the complaint of sexual abuse after she was in placement, Mother "gets mad, saying that it doesn't need to be addressed because [D.H.-R.] wasn't with her … at the time of the disclosure, but the alleged report talks about a time when she was living with mom." *Id.* at 47.

Finally, regarding housing, the trial court found that "Mother obtained housing in October 2014, one year after the termination petition was filed. However, Mother's house is a one bedroom apartment, which is not appropriate for two Children." Trial Court Opinion, 5/18/15, at 8. Ms. Paller's testimony supports the court's finding in that she testified on redirect examination that Mother sleeps in the bedroom of the apartment, and that she does not having bedding for the Children. N.T., 2/10/15, at 120-121. As such, Ms. Paller testified that Mother is not in compliance with her housing goal. *Id.* at 121.

We conclude that the record overwhelmingly supports the trial court's decision to terminate Mother's parental rights pursuant to Section 2511(a)(2). Indeed, Mother's repeated and continued incapacity, abuse,

neglect, or refusal to comply with her family service plan goals and/or make sufficient progress in the goals has caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Further, after a minimum of 52 months at the time of the hearing that the Children had been in placement, we discern no abuse of discretion by the trial court in concluding that the causes of Mother's incapacity, abuse, neglect, or refusal cannot or will not be remedied. Therefore, Mother's arguments with respect to Section 2511(a)(2) fail.

With respect to Section 2511(b), Mother argues that the Children are bonded to her and that terminating her parental rights will not serve their developmental, physical, and emotional needs and welfare. Mother's Brief at 14. However, the trial court found that the "Children will not suffer any irreparable harm by terminating Mother's parental rights." Trial Court Opinion, 5/18/15, at 12. Ms. Paller's testimony supports the court's conclusion.

Ms. Paller testified that the Children have been living with their maternal grandmother in New Jersey since February 2014, and that they desire to remain with her. N.T., 2/10/15, at 67, 81. She testified that Mother had one visit with the Children sometime after December 18, 2014, and before the termination hearing on February 10, 2015. *Id.* at 63-64. Following the visit, Ms. Paller testified on direct examination that the Children "felt uneasy." *Id.* at 67.

They have a fear they're being removed, that they're going to go back to mom, and they keep asking me "Well, … why is she coming now? Are we going back? Are we going home?" And there's a lot of reassurance that's needed.

Q. Reassurance that's needed for what?

A. To de-escalate them so that they know that they're remaining with grandmom at this point.

*Id.*

Moreover, Ms. Paller also testified as follows on cross-examination by the Child Advocate.

Q. You testified that you do not believe that [D.R.H.] would suffer irreparable harm if [M]other's parental rights were terminated. Why is that?

A. Well, because [M]other … doesn't have a positive bond with the child. Mother has not shown any capacity for intaking the knowledge given at the parenting capacity or anger management classes. … The child is with maternal grandmother, and if [M]other ever presents stable enough, maternal grandmother would allow her daughter to see the children.

Q. And is that also your testimony for [D.H.-R.]?

A. Yes.

Q. Do you believe that it would be safe to reunify the [C]hildren with their mother today?

A. No.

…

I think [M]other is aggressive and I think [M]other is reactionary and would put the [C]hildren at risk. I think there's no stable housing. Mother had a

mental health breakdown as recent as December. If [the Children] were there with her, they would have found her.[8]

***Id.*** at 93-94.

Therefore, based on the foregoing testimony of Ms. Paller, we discern no abuse of discretion by the trial court in concluding that terminating Mother's parental rights serves the Children's developmental, physical, and emotional needs and welfare. ***See J.M.***, ***supra***. Thus, Mother's issue fails with respect to Section 2511(b).

Accordingly, we conclude the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b). ***See T.S.M.***, ***supra***. Therefore, we affirm the trial court's February 10, 2015 decrees.

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2015

_____

[8] Ms. Paller testified that Mother's nervous breakdown in December 2014 involved a suicide attempt for which she was admitted to a psychiatric hospital. N.T., 2/10/15, at 55, 94.